John RAUCH, et al.

v.

UNITED INSTRUMENTS, INC. and Tokyo Aircraft Instrument Company.

Civ. A. No. 75–61.

United States District Court,
E. D. Pennsylvania.

Dec. 17, 1975.

**444**

Arthur Alan Wolk, Philadelphia, Pa., for plaintiffs.

George P. Williams, III, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

BECHTLE, District Judge.

Defendants have filed a motion seeking reconsideration of this Court's Order denying their motion to dismiss the complaint and granting plaintiffs' motion for leave to file an amended complaint. Alternatively, defendants ask that we amend our original Order to include a certification for interlocutory appeal pursuant to 28 U.S.C. § 1292(b), and stay all other proceedings in the case pending action by the court of appeals. For the reasons stated below, we will deny the motion for reconsideration and grant the latter request.

Our Order and accompanying opinion were filed on September 11, 1975. We held that the complaint states a claim upon which relief can be granted and that the availability of a private remedy is properly implied for a violation of the Federal Aviation Act of 1958, 49 U.S.C.A. § 1301 *et seq.* Specifically, this Court's holding was that an implied private right of action exists for a violation of the *safety* regulations promulgated by the Federal Aviation Administration ("F.A.A.") pursuant to the authority contained in 49 U.S.C.A. § 1421. The Court emphasizes that a broader construction of its ruling would be unjustified and that it is only the F. A.A. *safety* regulations, and the sections of the statute upon which those regulations are based, which fall within the scope of the decision.

At the time this Court's opinion and Order were filed, neither counsel nor the Court had received copies, or were aware, of a decision filed by the Third Circuit two days earlier in *Polansky v. Trans World Airlines, Inc.*, 523 F.2d 332 (3d Cir. 1975). In that case, the court refused to imply a private cause of action based on 49 U.S.C.A. § 1374(b) and 49 U.S.C.A. § 1381 in favor of airline passengers who were furnished allegedly inferior ground accommodations during a tour sponsored by a Civil Aeronautics Board ("C.A.B.") regulated air carrier. Those two sections of the Federal Aviation Act, respectively, prohibit discrimination by any regulated air carrier and give the C.A.B. power to investigate and enjoin unfair or deceptive practices. It is the *Polansky* decision which forms the basis for defendants' motion for reconsideration in the instant case.

We note preliminarily that the Third Circuit's ruling in *Polansky* was specifically limited to the facts of that case.[1] We find *Polansky* distinguishable on several grounds and do not consider it controlling authority on the question before this Court. Since the Third Circuit's refusal to imply a private right of action in *Polansky* was based on the third and fourth standards of *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L. Ed.2d 26 (1975), we will focus our review on those two areas.

---

1. This is particularly true of the court's discussion of § 1374(b), which is the portion of the opinion relied on by defendants. The analysis in that section of the opinion followed the four-pronged test enunciated by the Supreme Court in *Cort v. Ash*, 422 U. S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), for determining whether a private remedy is implicit in a statute not expressly providing for one. This Court also employed the *Cort v. Ash* guidelines in making its decision. We do not believe that con-

The third of the *Cort v. Ash* inquiries is whether it would be consistent with the underlying purposes of the legislative scheme to imply a private remedy. The negative conclusion reached in *Polansky* was based upon the court's finding that there had been no discrimination shown within the meaning of the section under consideration, and thus no statutory violation was apparent upon the face of the complaint. *Polansky, supra*, 523 F.2d at 335–336 n. 12. The *Polansky* court stated that "protecting passengers from inadequate services would in *no* way foster the statutory goals" and that "where a private remedy would serve *no* statutory purpose, we shall not imply one." *Id.* at 337 (emphasis added).

In contrast to the situation in *Polansky*, the present complaint, on its face, clearly alleges violations of the safety regulations promulgated under authority granted by the Aviation Act.[2] As our earlier opinion stated, the primary purpose behind these regulations is "to promote safety of flight in civil aircraft." 49 U.S.C.A. § 1421(a).[3] Defendants rely upon the following language from *Moungey v. Brandt*, 250 F. Supp. 445, 451 (W.D.Wis. 1966), to support their contention that implication of a private right of action here would not be consistent with the purposes behind the Aviation Act:

The national interest in safety in civil aeronautics is adequately protected by the network of statutory and administrative procedures and sanctions expressly created by the Federal Aviation Program, as outlined above. No persuasive reason suggests itself why the efficacy of the Program need be fortified by the creation, by implication, of a civil remedy in the federal court.

However, "the fact that the statute provides explicitly for administrative action to accomplish its purpose does not alone negate the inference that a private action has also been created, even though the administrative regulation appears comprehensive." *Meyers v. Pennsylvania*, 416 U.S. 946, 950, 94 S.Ct. 1956, 1958, 40 L.Ed.2d 298 (1974) (Douglas, J., dissenting from denial of certiorari) (citations omitted). The implication of a private remedy in this case is based upon " . . . reasons [specifically] related to the substantive social policy embodied in an act of positive law." *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U. S. 388, 402–403 n.4, 91 S.Ct. 1999, 2008, 29 L.Ed.2d 619 (1971) (Harlan, J., concurring). As our original opinion stated, "where the primary purpose behind a statute is to promote safety and save lives, any method of enforcement which will encourage compliance with its terms

---

trary conclusions resulting from use of the same basic decision-making process necessarily evidence any error for, just as "each new category of conduct alleged to violate § 1374(b) must be tested against the standards stated by the Supreme Court in *Cort v. Ash*," *Polansky v. Trans World Airlines, Inc., supra*, 523 F.2d at 335, we believe the propriety of implying a private remedy from any particular section of a wide-ranging statute, such as the Federal Aviation Act, must also be individually judged according to those standards.

2. This Court has no doubt that a civil remedy may be inferred from an administrative regulation, adopted pursuant to statute and having the force of law, *Todd v. United States*, 384 F.Supp. 1284, 1294 (M.D.Fla. 1975), as well as from the statute itself.

*See Gabel v. Hughes Air Corp.*, 350 F.Supp. 612 (C.D.Cal.1972) ; *Neiswonger v. Goodyear Tire & Rubber Co.*, 35 F.2d 761 (N.D. Ohio 1929).

3. James E. Dow, in his position as Acting Administrator, Department of Transportation, Federal Aviation Administration, has recently written that " . . . the primary mission of the agency . . . is to prevent aircraft accidents, not wait around until one happens." He further indicated that the F.A.A., "whose overriding concern is safety," has never, during his more than 30 years with the agency, "given aviation safety a secondary role." *Playboy*, October, 1975, at 12. We consider these remarks a clear reflection of the congressional policy embodied in the Federal Aviation Act and the safety regulations here in question.

should be viewed as consistent with the legislative scheme." Authorizing suits for damages based on violations of the regulations cited by plaintiffs will directly aid in effectuating this clear congressional policy underpinning the substantive provisions of the Federal Aviation Act.

■ The second factor to be reexamined here is whether plaintiffs' cause of action is one "traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law." *Cort v. Ash, supra,* 422 U.S. at 78, 95 S.Ct. at 2088, 45 L.Ed.2d 26. This Court recognizes that "[o]nly where there is some countervailing national interest should the federal courts imply a federal private remedy when an adequate state remedy already exists." *Polansky, supra,* 523 F.2d at 337.

■ Aviation is not a basic area of state concern. Courts have previously recognized "the prevailing federal interest in uniform air law regulation . . . ." *Kohr v. Allegheny Airlines, Inc.,* 504 F.2d 400, 403 (7th Cir. 1974), *cert. denied,* 421 U.S. 978, 95 S.Ct. 1980, 44 L.Ed.2d 470 (1975). *See City of Burbank v. Lockheed Air Terminal, Inc.,* 411 U.S. 624, 639, 644, 93 S.Ct. 1854, 36 L.Ed.2d 547 (1973); *Northwest Airlines, Inc. v. Minnesota,* 322 U.S. 292, 303, 64 S.Ct. 950, 88 L.Ed. 1283 (1944) (Jackson, J., concurring). More specifically, in relation to the plaintiffs' allegations in the instant case, it has recently been stated that:

> The interest of the federal government in regulating the design and manufacture of aircraft is just as intensive, pervasive, exclusive and great as its interest in regulating the "af-

fairs of the nation's airways." *In re Paris Air Crash of March 3, 1974,* 399 F.Supp. 732, 747 (C.D.Cal. 1975).[4]

■ In *Polansky, supra,* as previously mentioned, the Third Circuit found that the purposes of the Federal Aviation Act would not be fostered by granting a private remedy for the conduct alleged. Thus, any justification for ignoring the available state remedies for breach of contract, breach of warranty and fraudulent misrepresentation was considered to be "utterly lacking." *Id.* at 337. The court added in dictum that it saw in that case "no greater interest for the development of a federal contract law for regulated air carriers than earlier courts [had] seen for the development of a federal tort law for regulated air carriers," citing *Moungey v. Brandt, supra. Polansky, supra* at 337. We believe that the *Polansky* court's citation of *Moungey* reflected its approval of the analytical framework employed in that case rather than the result itself. The *Moungey* opinion "pointed out that state remedies had not been characterized as inadequate and further, that the federal government's air safety program would not be improved by creation of a federal tort remedy." *Polansky, supra,* 523 F.2d at 338. It is readily acknowledged that in the present case, if the allegations of the complaint are proved, there are state remedies available under strict tort liability, negligence or breach of warranty theories. However, this Court respectfully disagrees with the conclusion reached in *Moungey* that no benefit to the federal government's air safety program will result from the implication of a federal private remedy. This Court's view is that, in addition to the existing state tort remedies which remain fully intact, an implied federal right of action to recover for a violation of the Federal Aviation Act, and the safety regulations

---

4. The Court notes that in the above-cited opinion Judge Hall reexamined, in light of the factors set forth in the subsequent Supreme Court decision in *Cort v. Ash, supra,* his holding in *Gabel v. Hughes Air Corp.,* 350 F.Supp. 612 (C.D.Cal. 1972), that the Federal Aviation Act creates a private cause of action and he again reached the same conclusion. *In re Paris Air Crash of March 3, 1974, supra* at 747–748.

promulgated thereunder, will be of direct aid in accomplishing the primary congressional goal of reducing the possibility of death or personal injury from flying.

 We believe that furtherance of the primary statutory purpose of, and national interest in, maximization of safety in the air industry justifies the implication of a federal remedy here despite the apparent availability of adequate state remedies. We state again that when the Congress of the United States acts to give the federal government primary responsibility for the formulation of standards of conduct in an industry affecting human life and well-being to the extent that it has through the Federal Aviation Act, this Court is hesitant to expose such clear congressional intent to reexamination, manipulation and compromise in state-created causes of action. *Cf. Kohr v. Allegheny Airlines, Inc., supra,* 504 F.2d at 403.

While we do not believe that the *Polansky* opinion necessitates any change in our position, this case does appear to present precisely the type of situation intended for an interlocutory appeal pursuant to 28 U.S.C. § 1292(b). *See generally Katz v. Carte Blanche Corporation,* 496 F.2d 747 (3d Cir.) (en banc), *cert. denied,* 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974). Our ruling involves a "controlling question of law," offers "substantial ground for difference of opinion" as to its correctness and, if appealed immediately, may "materially advance the ultimate termination of the litigation." *Katz v. Carte Blanche Corporation, supra* at 754.

Our holding that a private right of action exists here in favor of plaintiffs is "controlling" in that, if erroneous, it will require reversal on final appeal and, also, because it is "serious to the conduct of the litigation," both practically and legally. *Id.* at 755. Legally, if our decision is incorrect, plaintiffs will have no basis for maintaining their suit in federal court. Practically, if our deci-

sion is erroneous, a prompt determination of that fact will be useful in saving judicial time and resources, as well as considerable expense to the parties if this litigation is to proceed.

This Court will amend its Order of September 11, 1975, to certify that the decision reached by the Court involves a controlling question of law best suited for pretrial disposition pursuant to 28 U.S.C. § 1292(b) and that all other proceedings in the case shall be stayed until some action has been taken upon this interlocutory appeal.

An appropriate Order will be entered.